IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

AARON LIONEL MAX HEATON,
*et al.*,

       Plaintiffs,

    v.                            Civ. No. 21-463 JCH/KK

JOSE ARMANDO GONZALES,
*et al.*,

       Defendants.

## ORDER DENYING MOTION TO COMPEL
## AND GRANTING MOTION FOR PROTECTIVE ORDER

THIS MATTER is before the Court on Defendants' Motion for Order Compelling Production (Doc. 39), filed November 8, 2021, and Non-Party Well States Healthcare, LLC's Motion for Protective Order/Motion to Quash and Response to Defendants' Motion to Compel (Doc. 45), filed November 22, 2021. The Court, having reviewed the parties' submissions, the record, and the relevant law, and being otherwise fully informed, FINDS that Defendants' motion is not well taken and should be DENIED and that Well States Healthcare, LLC's motion is well taken and should be GRANTED.

### A. Background

Plaintiffs Aaron Lionel Max Heaton and Alondra Heaton brought this action against Defendants Jose Armando Gonzales, Juan Mascorro, and J&E Livestock Transportation, LLC, based on personal injuries stemming from a motor vehicle accident. (*See* Doc. 1-2.) Non-party Well States Healthcare, LLC ("Well States") is a "medical factoring company" that purchases accounts receivable from healthcare providers who treat injured individuals. (Doc. 45-6 ¶ 1.) Well States purchases the accounts receivable for an "amount based upon a percentage of the reasonable

and customary billable amount" charged for treatment. (Doc. 39-4 at 2.) "In exchange for agreeing to purchase accounts receivable from medical providers who treat these injured individuals, Well States receives a lien on the proceeds derived from the individuals' personal injury claims." (Doc. 45-6 ¶ 1.) Individuals are obligated to pay Well States "100% of the billed charges for the treatment rendered," and repayment is not contingent on the success of their lawsuits. (*Id.*; *see also* 45-7, 45-8.)

Well States' "only source of profit is the margin between what it pays for accounts receivable and what it recoups on its lien at the conclusion of each personal injury case." (Doc. 45-6 ¶ 6(d).) In purchasing accounts receivable, it takes on

> all of the risk associated with the account, including the possibility that the debtor will lose his/her personal injury case and not have funds to pay Well States, 1-3 year delays in receiving payment based upon duration of the personal injury litigation, the possibility of pursuing collection if the debtor refuses to pay the lien, etc.

(*Id.* ¶ 1.)

Well States purchased accounts receivable related to Plaintiffs' post-accident medical care and holds a lien against any proceeds Plaintiffs recover in this action in the full amount billed for this care. (*Id.* ¶ 3.) Plaintiffs "remain personally responsible for paying Well States the full amount of the billed charges . . . in the event the proceeds they recover . . . are not sufficient to cover Well States' lien balance." (*Id.*)

On October 12, 2021, Defendants served a subpoena on Well States requesting production, by October 29, 2021, of all documents relating to Well States' relationship with Plaintiffs and their healthcare providers. (Doc. 45-1 at 1, 3, 7–8.) On October 27, 2021, Well States' counsel left a voicemail for defense counsel, and followed up with an e-mail, requesting a two-week extension to respond to the subpoena. (Doc 39-3 at 3.) Defendants did not respond to Well States' request

for an extension. (Doc. 45-11 ¶ 4.) On October 29, 2021, Well States' counsel sent defense counsel an e-mail stating that his client objected to Defendants' "request for information pertaining to the amount that it paid to purchase the subject accounts receivable" and that it would be producing documents responsive to Defendants' subpoena, but with the purchase amounts redacted. (Doc 39-3 at 2.)

On November 1, 2021, Well States produced responsive documents with the redactions indicated in its counsel's October 29 e-mail.[1] (Doc. 39 at 3; Doc. 45-6 ¶ 5.) On November 2, 2021, defense counsel e-mailed Well States' counsel asserting that his "email objection from October 29, 2021 is not only untimely, but also insufficient." (Doc. 39-3 at 1.) Defendants stated that if they did not receive "a full response with all documents in unredacted form no later than Friday November 5, 2021" then they would file a motion to compel. (*Id.*)

On November 8, 2021, Defendants filed their motion asking the Court to compel "complete and unredacted production of the documents sought under Defendants' Subpoena." (Doc. 39 at 1.) Specifically, Defendants seek production of the amounts Well States paid to purchase accounts receivable related to Plaintiffs' post-accident medical care. (*Id.* at 3–4.) On November 22, 2021, Well States responded in opposition to Defendants' motion and also moved for a protective order regarding the purchase amounts and for an order quashing the portion of Defendants' subpoena seeking these amounts. (Doc. 45 at 23.)

---

[1] It appears that Well States tried to produce responsive documents on Friday, October 29, 2021, but due to "technical difficulties," it was unable to do so until Monday, November 1, 2021. (Doc. 39-3 at 1.)

**B. Legal Standards**

Federal Rule of Civil Procedure 45 governs subpoenas issued to nonparties. Fed. R. Civ. P. 45; *see also* Fed. R. Civ. P. 34(c) ("As provided in Rule 45, a nonparty may be compelled to produce documents and tangible things or to permit an inspection."); *Simon v. Taylor*, No. 12-cv-96, 2014 WL 6633917, at *14 (D.N.M. Nov. 18, 2014) ("Discovery of non-parties must be conducted by subpoena pursuant to [Rule] 45."). Under Rule 45, a subpoena issued to a nonparty is "subject to the same discovery limitations as those set out in Rule 26." *Quarrie v. Wells*, No. 17-cv-350, 2020 WL 4934280, at *2 (D.N.M. Aug. 24, 2020) (quoting *W. Convenience Stores, Inc. v. Suncor Energy (U.S.A.) Inc.*, 11-cv-1611, 2014 WL 1257762, at *21 (D. Colo. Mar. 27, 2014)).

Under Rule 26, parties may "obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). Factors that pertain to proportionality are

> the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.

*Id.* "Information within this scope of discovery need not be admissible in evidence to be discoverable." *Id.* However, discovery from nonparties must, "under most circumstances, be closely regulated." *Premier Election Sols., Inc. v. Systest Labs Inc.*, No. 09-cv-1822, 2009 WL 3075597, at *3 (D. Colo. Sept. 22, 2009).

**C. Discussion**

The sole discovery dispute at issue here is whether Well States should be required to disclose to Defendants the amounts it paid to purchase accounts receivable related to Plaintiffs'

post-accident medical care. Defendants make three arguments in support of their motion to compel,

*i.e.*, that: (1) Well States has waived its objections because these objections were untimely under

Rule 45(d)(2)(B); (2) the purchase amounts at issue are discoverable because they are relevant and

necessary to Defendants' evaluation of Plaintiffs' post-accident medical treatment and the

reasonableness of their medical costs; and, (3) the purchase amounts are relevant to show bias on

the part of Plaintiffs' healthcare providers. (Doc. 39 at 4–6.) In response, Well States argues that

it had good cause for its delay in objecting; the purchase amounts are highly confidential trade

secrets; Defendants have not shown that the purchase amounts are relevant or necessary to this

case; and, disclosure of the purchase amounts would cause them irreparable harm. (Doc. 45 at 8,

9.)

*1. Well States has not waived its objections to Defendants' subpoena*

Under Rule 45, a party receiving a subpoena may serve written objections "before the

earlier of the time specified for compliance or 14 days after the subpoena is served." Fed. R. Civ.

P. 45(d)(2)(B). In its discretion, a court may find that untimely objections to a subpoena are

waived. *See Carpenter v. Deming Surgical Assocs.*, No. 14-cv-64, 2015 WL 13662880, at *2

(D.N.M. Apr. 20, 2015). In determining whether objections have been waived, courts consider

factors such as whether

> (1) the subpoena was overbroad on its face and exceeded the bounds of fair
> discovery, (2) the subpoenaed witness was a nonparty acting in good faith, and (3)
> counsel for the witness and counsel for the subpoenaing party were in contact
> concerning the witness' compliance prior to the time the witness challenged the
> legal basis for the subpoena.

*Tank Connection, LLC v. Haight*, No. 13-cv-1392, 2015 WL 3571424, at *2 (D. Kan. June 5,

2015). If a court finds unusual circumstances and good cause, untimeliness will not bar the court

from considering a nonparty's objections. *See In re Subpoenas Duces Tecum Issued by U.S. Dist. Ct. for Dist. of New Mexico*, No. 04-cv-8400, 2006 WL 8443319, at \*2 (D.N.M. Nov. 3, 2006).

Defendants argue that because Well States sent their objections 17 days after service, the objections were untimely under Rule 45(d)(2)(B). (Doc. 39 at 4.) Defendants also argue that Well States did not provide a legal basis for the objections until it filed its motion for a protective order on November 22, 2021.[2] (Doc. 51 at 2–3.) In response, Well States argues that Defendants' subpoena "imposed a very tight deadline," Defendants ignored its request for an extension, it had difficulty in finding local counsel,[3] and it acted "in good faith and with urgency" to produce the responsive documents. (Doc. 45 at 10.) Well States also asserts that "Defendants have suffered no prejudice," whereas "Well States will be severely prejudiced if the Court declines to consider its arguments on the merits." (*Id.*)

The Court has considered the totality of the circumstances in light of the factors listed above and finds unusual circumstances and good cause for Well States' delay in objecting to Defendants' subpoena. First, as further discussed below, the subpoena is facially overbroad and exceeds the bounds of fair discovery because the purchase amounts at issue are confidential trade secrets and Defendants have not shown that disclosure of these amounts is relevant and necessary to this case. Next, the record shows that Well States acted in good faith in seeking an extension before the time specified for compliance with the subpoena expired; and, when Defendants ignored

---

[2] Defendants also argue that the Court should deny Well States' motion because Well States failed to comply with Local Rule 7.1(a). (Doc. 51 at 4.) However, Well States included in its motion a certification pursuant to this rule stating, "[c]ounsel for Well States certifies that he has conferred in good faith with counsel for Defendants concerning this Motion and Response." (Doc. 45 at 1.) The Court is satisfied that Well States has met its obligations under the Local Rules.

[3] Well States contends that its "Colorado attorney contacted/communicated with eleven different potential New Mexico attorneys, ten of whom had conflicts of interest or declined the representation due to the press of business." (Doc. 45 at 10.)

Well States' request for an extension, it acted promptly to produce the requested documents with

minimal redactions. (Doc. 39-3 at 1–2; Doc. 45-11 ¶¶ 4–5.) Finally, Well States' very brief delay

in objecting has not prejudiced Defendants in any way. The Court will therefore consider Well

States' objections to Defendants' subpoena.

> 2. *The purchase amounts at issue are trade secrets and Defendants have not*
> *shown that their disclosure is relevant and necessary to this action*

"[T]here is no absolute privilege for trade secrets and similar confidential information."

*Fed. Open Mkt. Comm. of Fed. Rsrv. Sys. v. Merrill*, 443 U.S. 340, 362 (1979) (quotation marks

and citations omitted). To determine if a trade secret must be disclosed in discovery, the Tenth

Circuit has established a burden-shifting framework and balancing test. *See Centurion Indus., Inc.*

*v. Warren Steurer & Assocs.*, 665 F.2d 323, 325–26 (10th Cir. 1981). First, the party resisting

disclosure must establish that "the information sought is a trade secret and then demonstrate that

its disclosure might be harmful." *Id.* at 325. If this is established, "the burden shifts to the party

seeking discovery to establish that the disclosure of trade secrets is relevant and necessary to the

action." *Id.* If both parties have met their burdens, the court "must balance the need for the trade

secrets against the claim of injury resulting from disclosure." *Id.* "[I]f the trade secrets are deemed

relevant and necessary, the appropriate safeguards that should attend their disclosure by means of

a protective order are also a matter within the trial court's discretion." *Id.* at 326; *see also* Fed. R.

Civ. P. 45(d)(3).

a.  The purchase amounts at issue are trade secrets and their disclosure might be harmful

Under New Mexico law,[4] a trade secret is "information … that (1) derives independent economic value, actual or potential, from not being generally known to and not being readily ascertainable by proper means by other persons who can obtain economic value from its disclosure or use; and (2) is the subject of efforts that are reasonable under the circumstances to maintain its secrecy." N.M. Stat. Ann. § 57-3A-2(D). Courts consider the following six factors in determining whether information is a business owner's trade secret:

> (1) the extent to which the information is known outside of his business; (2) the extent to which it is known by employees and others involved in his business; (3) the extent of measures taken by him to guard the secrecy of the information; (4) the value of the information to him and to his competitors; (5) the amount of effort or money expended by him in developing the information; (6) the ease or difficulty with which the information could be properly acquired or duplicated by others.

*Pincheira v. Allstate Ins. Co.*, 190 P.3d 322, 327 (N.M. 2008) (quoting *Restatement (First) of Torts* § 757 cmt. b (1939)).

Well States contends that all six factors show the purchase amounts at issue are trade secrets. Heather Casey, Well States' Director of Operations, asserts in an affidavit that:

(1) "[T]he amounts Well States pays for any account receivable … are not known outside the business, other than by the medical providers from whom Well States purchases the receivables. No one else knows Well States' purchase rates or margins[.]" (Doc. 45-6 at 3.)

---

[4] State law governs what is a trade secret. *See Harvey Barnett, Inc. v. Shidler*, 338 F.3d 1125, 1129 (10th Cir. 2003). Well States argues that because it "has its principal office in Colorado, which is where the subject trade secret materials are kept, Colorado law should control the [trade secret] analysis." (Doc. 45 at 11 n.4.) However, New Mexico and Colorado have each adopted the Uniform Trade Secrets Act and both states look to the same factors when determining whether information is a trade secret. *See Pincheira v. Allstate Ins. Co.*, 190 P.3d 322, 327 (N.M. 2008); *Colo. Supply Co. v. Stewart*, 797 P.2d 1303, 1306 (Colo. App. 1990). Because there is no conflict of law between New Mexico and Colorado, the Court will apply New Mexico law. *See Ferrell v. Allstate Ins. Co.*, 188 P.3d 1156, 1164 (N.M. 2008) ("[W]hen the laws of the relevant states do not actually conflict, the court may avoid a conflict-of-law analysis and may apply forum law[.]").

(2) Well States is a small company with 48 employees, "all of whom are involved in the process of purchasing or managing accounts receivable from medical providers and/or developing new business with medical providers, and, therefore need to know and use the purchase rates." (*Id.*) As a condition of employment, each employee agrees to keep the purchase rates confidential.

(3) "Each Provider Purchase Agreement listing the purchase rates is kept in a private, secured folder on Well States' server." (*Id.*) Additionally, medical providers "are obligated to maintain the secrecy of the purchase price and are prohibited from disclosing that information," and Well States "never discloses its payment rates to anyone else, and resists any and all attempts of outsiders to obtain this information, including litigating the matter when necessary." (*Id.* at 3–4.)

(4) Well States' "only source of profit is the margin between what it pays for accounts receivable and what it recoups on its lien at the conclusion of each personal injury case," and if its purchase rates were to become more broadly known, it would lose bargaining power with medical providers and patients. (*Id.* at 4.) Furthermore, Well States' "purchase rates vary by provider, and there is substantial risk that Well States will lose business if providers or competitors learn of those rates." (*Id.*)

(5) Well States has spent "millions of dollars and immeasurable amounts of time identifying medical providers with whom to work, marketing to those providers, negotiating the purchase rates with them plugging those rates into Well States' algorithm, and developing its business model based thereon." (*Id.* at 4-5.)

(6) "Because of the unique and highly specific nature of Well States' business, it would take others a substantial amount of time and expense to acquire or duplicate Well States' formulas (provider relationships, purchase rates, and profit margins) and business model." (*Id.* at 5.)

Well States further contends that it is in a highly competitive industry and reiterates that its

only source of income is the margin between what it pays and what it recoups. (Doc. 45 at 15.) As

such, if its purchase rates were to become more broadly known, competitors could underbid its

rates or providers could try to renegotiate them, which would cause substantial and irreparable

harm to Well States' business. (*Id.*)

Defendants argue that Well States "offers no objective evidence in support of its trade

secret claim," and assert that Ms. Casey's affidavit is "self-serving" and "conclusory." (Doc. 51 at

5.) But Defendants have proffered no evidence or argument that contradicts Ms. Casey's affidavit.

The Court finds that Well States has met its burden and has established that the purchase amounts

at issue are confidential trade secrets and their disclosure might be harmful.

b.  Defendants have not established that disclosure of the purchase amounts at
    issue is relevant and necessary to the action

Because Well States has established that the purchase amounts at issue are trade secrets

and that their disclosure might be harmful, the burden shifts to Defendants to show that discovery

of this information is relevant and necessary to the action. *Centurion Indus., Inc.*, 665 F.2d at 325.

Defendants first argue that the purchase amounts are "discoverable and necessary for Defendants'

evaluation of the post-accident medical treatment and reasonableness of the alleged medical

expenses in this matter." (Doc. 39 at 5.) As to this argument, the Court adopts the analysis of the

District of Colorado in *Seely v. Archuleta*, No. 08-cv-2293, 2011 WL 2883625 (D. Colo. July 18,

2011). In analogous circumstances, the *Seely* court explained:

> The discounted amount of medical services does not necessarily, and in fact
> probably does not, reflect the true value of the services rendered…. [T]here are
> many reasons why insurance companies and healthcare providers enter into
> contracts that discount the full amount charged by the providers. Indeed, it can be
> tempting to treat the discounted amounts as being a truer reflection of a plaintiff's
> damages. A discounted rate, however, generally reflects the third-party payor's

negotiating power and the fact that providers enjoy prompt payment, assured collectability, avoidance of collection costs, increased administrative efficiency, and access and marketing to a larger patient pool.

*Id.* at *5 (quotation marks and citations omitted). For these reasons, Defendants have not shown that the purchase amounts at issue are relevant and necessary to their evaluation of the reasonableness of Plaintiffs' post-accident medical treatment and expenses.

Defendants next argue that the purchase amounts "are discoverable as they are reasonably calculated to lead to the discovery of evidence of potential bias in this case stemming from [Well States'] agreements with Plaintiffs' medical providers and the incentives created for Plaintiffs' medical providers who may testify on behalf of Plaintiffs." (Doc. 39 at 5.) According to Defendants, the relationship between Well States and Plaintiffs' medical providers creates a risk of bias because if the providers "did not provide a favorable causation analysis – which is necessary to win a tort action," then Well States would likely stop referring patients to these providers.[5] (*See* Doc. 51 at 7 (quoting *ML Healthcare Services, LLC v. Publix Super Markets, Inc.*, 881 F.3d 1293, 1302 (11th Cir. 2018).)

This argument is unavailing because it does not depend on the specific amounts that Well States paid to purchase the pertinent accounts receivable; rather, it depends only on the nature of the relationship between Well States, Plaintiffs, and their providers. *See ML Healthcare Services*, 881 F.3d at 1299 (noting district court ruling that "the doctors could be impeached with evidence of this relationship between themselves, ML Healthcare, and the patients ML Healthcare had

---

[5] Defendants also argue that under *ML Healthcare Services*, the collateral source rule would not bar evidence of Well States' payment arrangements if used to show bias. (Doc. 39 at 5–6; Doc. 51 at 6–7.) Not only is this argument irrelevant to the Court's analysis, but also the collateral source rule is a substantive rule of evidence controlled by state law. *Blanke v. Alexander*, 152 F.3d 1224, 1231 (10th Cir. 1998). And, *ML Healthcare Services* analyzed Georgia's collateral source rule, which does not apply here. *ML Healthcare Services*, 881 F.3d at 1300.

referred"). Pursuant to Defendants' subpoena, Well States has already "produced various documents, which reflect an investment arrangement, involving [Well States] as the investor, several of Plaintiffs' medical providers, and Plaintiffs." (*See* Doc. 39 at 3.) Defendants have not shown why the specific purchase amounts Well States paid would meaningfully add to Defendants' bias argument.

In sum, Well States has met its burden to show that the purchase amounts at issue are confidential trade secrets, but Defendants have not met their burden to show that the amounts are relevant and necessary to this case. And as the Tenth Circuit has explained, "[i]f proof of relevancy or need is not established, discovery should be denied." *Centurion Indus.*, 665 F.2d at 325. Thus, Defendants' motion to compel will be denied and Well States' motion for a protective order will be granted.

### 3.  *Well States' request for attorney's fees and costs is denied*

In its prayer for relief, Well States requests its attorney's fees and costs pursuant to Rule 26(c)(3) and Rule 37(a)(5). (Doc. 45 at 23.) Under Rule 37(a)(5), if a motion to compel is denied, the Court "must … require the movant, the attorney filing the motion, or both to pay the party … who opposed the motion its reasonable expenses incurred in opposing the motion, including attorney's fees." Fed. R. Civ. P. 37(a)(5)(B). However, the Court "*must not* order this payment if the motion was substantially justified." *Id.* (emphasis added). A motion is substantially justified if there is a "reasonable basis both in law and fact" to support it. *Lester v. City of Lafayette, Colo.*, 639 F. App'x 538, 541 (10th Cir. 2016) (quoting *Pierce v. Underwood,* 487 U.S. 552, 565 (1988)). Here, Defendants' position had a reasonable basis in fact and law, *i.e.*, that Well States had waived its objections by failing to make them in a timely manner under Rule 45(d)(2)(B). Because

Defendants' motion was substantially justified, the Court will not award Well States its attorney's fees and costs.

### D. Conclusion

For the reasons stated above, Well States has shown that the amounts it paid to purchase accounts receivable related to Plaintiffs' post-accident medical care are confidential trade secrets and disclosure of these amounts might be harmful; and, Defendants have not shown that the purchase amounts are relevant and necessary to this action. IT IS THEREFORE ORDERED that Defendants' Motion for Order Compelling Production (Doc. 39) is DENIED, and Non-Party Well States Healthcare, LLC's Motion for Protective Order/Motion to Quash (Doc. 45) is GRANTED. The portion of Defendants' subpoena seeking the amounts Well States paid to purchase accounts receivable related to Plaintiffs' post-accident medical care is hereby QUASHED, and Defendants may not seek to discover these amounts in this action.

IT IS SO ORDERED.

KIRTAN KHALSA
UNITED STATES MAGISTRATE JUDGE