**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO**

AARON LIONEL MAX HEATON,
*et al.*,

       Plaintiffs,

v.                                            Civ. No. 21-463 JCH/KK

JOSE ARMANDO GONZALES, *et al.*,

       Defendants.

<u>**ORDER ON DEFENDANTS' MOTIONS TO STRIKE AND TO DISMISS**</u>

THIS MATTER is before the Court on:  (1) Defendants' Motion to Strike Plaintiffs' Expert Witness Disclosures (Doc. 28) ("Motion to Strike"), filed October 19, 2021; and, (2) Defendants' Motion to Dismiss for Repeated Discovery Violations (Doc. 65) ("Motion to Dismiss"), filed January 7, 2022. The Court has determined that a hearing would not materially assist it in resolving these motions. Having reviewed the parties' submissions, the record, and the relevant law, the Court FINDS that the motions are not well taken and should be DENIED. However, the Court further FINDS that Plaintiffs should be required to supplement their disclosures and discovery responses.  Further, for the reasons discussed, Plaintiffs are sanctioned and warned that if they continue to violate this Court's rules and orders, the Court may impose additional sanctions up to and including dismissal.

## I.    Background and Procedural History

Plaintiffs Aaron Lionel Max Heaton and Alondra Heaton bring this action against Defendants Jose Armando Gonzales, Juan Mascorro, and J&E Livestock Transportation, LLC, seeking damages for personal injuries arising out of a motor vehicle accident. (Doc. 1-2.) In their Complaint, Plaintiffs assert claims for negligence and gross negligence against Defendant

Gonzales and for *respondeat superior* liability, negligence, and gross negligence against Defendant Mascorro and J&E Transportation, LLC. (*Id.* at 3-8.) Plaintiffs seek compensatory damages for "temporary and permanent" bodily injury, physical and mental pain and suffering, medical expenses, lost enjoyment of life, "bodily impairment," inability "to engage in family, social, recreational, and household services [and] activities," lost income, and "other damages which will continue into the future." (*Id.* at 8.) They also seek punitive damages and pre- and post-judgment interest. (*Id.* at 8-9.)

Plaintiffs filed this action in state court on March 4, 2021. (*Id.* at 1.) On May 17, 2021, Defendants removed the matter to this Court on the basis of diversity jurisdiction. (Doc. 1 at 3.) The Court entered a scheduling order on June 17, 2021, pursuant to which, *inter alia*, Plaintiffs' expert disclosures were due by October 1, 2021, Defendants' expert disclosures were due by November 1, 2021, and discovery was to close on December 14, 2021. (Doc. 11.) On June 21, 2021, the Court set a Rule 16 Settlement Conference for October 13, 2021, (Doc. 13), and on August 5, 2021, it set a jury trial for August 15, 2022. (Doc. 16.)

The first indication of the present discovery disputes arose when, on September 29, 2021, Defendants filed a motion to vacate the settlement conference on the basis of discovery violations they alleged Plaintiffs had committed. (Doc. 19.) The Court granted the motion, but on the basis that Plaintiffs had "failed to comply with the requirements of the Court's Order Setting Rule 16 Settlement Conference (Doc. 13) regarding the contents of the parties' confidential position statements." (Doc. 22 at 1.)

Then, on October 6, 2021, Defendants filed a motion to compel Plaintiffs to produce complete initial disclosures and responses to Defendants' Interrogatories Nos. 4, 5, and 24 and

Requests for Production Nos. 1, 9, and 14.[1] (Doc. 24.) The motion to compel showed that the documents and information Defendants sought were discoverable and that Defendants were entitled to an award of expenses, and Plaintiffs failed to rebut either of these arguments. (Doc. 36 at 2-3.) In fact, Plaintiffs failed to respond to the motion to compel at all. (*See generally id.*) Thus, on October 26, 2021, the Court granted the motion. (*Id.*) Specifically, the Court ordered Plaintiffs to "provide Defendants with the supplemental disclosures, answers to interrogatories, and responses to requests for production that Defendants seek" by November 16, 2021, and set a briefing schedule for Defendants' fee petition. (*Id.* at 3.)

Meanwhile, Defendants filed additional motions, including an opposed motion to extend case management deadlines on October 8, 2021, (Doc. 25), the Motion to Strike presently before the Court on October 19, 2021, (Doc. 28), and an unopposed motion to order independent medical examinations ("IMEs") on October 22, 2021, (Doc. 29). On October 25, 2021, the Court granted the motion to order IMEs, (Doc. 30); and, on October 26, 2021, it granted the motion to extend case management deadlines, Plaintiffs having again failed to respond to the motion. (Doc. 35.) Pursuant to the Court's order extending deadlines, Defendants' expert disclosures were due by December 27, 2021, and discovery was to close on February 8, 2022. (*Id.* at 2.)

After Plaintiffs also failed to respond to the Motion to Strike and to the fee petition Defendants filed on November 9, 2021, (Doc. 40), the Court issued an Order to Show Cause. (Doc. 44.) In this Order, the Court directed Plaintiffs to file a written show-cause response by December 3, 2021, explaining why the Court should not deem their persistent failure to respond to

---

[1] The discovery requests at issue are formally entitled Defendant J&E Livestock Transportation, LLC's First Sets of Interrogatories to Plaintiffs, and Defendant J&E Livestock Transportation, LLC's First Sets of Requests for Production to Plaintiffs. (*See, e.g.*, Doc. 24 at 9; Doc. 76-2 at 1, 8, 15, 21.) However, Defendants generally refer to these requests as having been propounded by "Defendants" and for ease of reference the Court will do the same. (*See generally* Docs. 24, 65, 79.)

Defendants' motions a failure to prosecute the action and consent to its dismissal. (Doc. 44 at 3.) On November 22, 2021, Defendants filed a motion to vacate Plaintiffs' IMEs based on Plaintiffs' alleged failure to comply with the Court's order granting Defendants' motion to compel. (Doc. 47.) The Court vacated the IMEs the following day. (Doc. 48.)

Plaintiffs responded to the Court's Order to Show Cause on November 29, 2021, explaining that they had failed to respond to Defendants' motions because their counsel's spam filter had intercepted the Court's electronic notifications that the motions had been filed. (Doc. 49.) Plaintiffs' show-cause response included two motions, *i.e.*, a motion to vacate the Court's order granting Defendants' motion to compel and a motion for leave to respond to Defendants' motion to compel, Motion to Strike, and fee petition out of time. (*Id.* at 3-4.) The Court declined to vacate its order granting the motion to compel, noting that Plaintiffs' counsel bore some culpability for failing to respond to the motion because he misconstrued defense counsel's mandatory attempts to confer regarding the parties' discovery disputes as "saber rattling." (Doc. 50 at 2-3.) However, the Court did allow Plaintiffs until December 23, 2021 to supplement their disclosures and discovery responses as previously ordered. (*Id.* at 4.) It also quashed its Order to Show Cause and allowed Plaintiffs to respond to Defendants' Motion to Strike and fee petition out of time, (*id.*), which Plaintiffs did on December 10, 2021. (Docs. 54, 55.) On December 17, 2021, Defendants filed a substantive reply in support of the Motion to Strike. (Doc. 56.)

Meanwhile, on December 9, 2021, Defendants filed their second opposed motion to extend case management deadlines. (Doc. 53.) Plaintiffs once again failed to respond to the motion, and the Court granted it on December 27, 2021. (Doc. 60.) Pursuant to this extension, Defendants' expert disclosures are due on March 28, 2022, and discovery will close on May 9, 2022. (*Id.* at 2.) On December 28, 2021, the Court granted Defendants' fee petition, directing Plaintiffs' counsel

to pay Defendants $3,861 in satisfaction of the sanctions awarded pursuant to Defendants' motion to compel. (Doc. 64.)

On January 7, 2022, Defendants filed the Motion to Dismiss presently before the Court, asserting that Plaintiffs still have not produced the disclosures and responses required by the Court's order granting Defendants' motion to compel. (Doc. 65 at 3-4.) Plaintiffs responded to the Motion to Dismiss on January 21, 2022. (Doc. 66.) However, the Court struck this response because Plaintiffs attached 210 pages of exhibits without consent or the Court's leave in violation of Local Rule 10.5, which limits exhibits to a response to 50 pages total. (Doc. 68); D.N.M.LR-Civ. 10.5. The Court gave Plaintiffs leave to file an amended response that "must either include no more than 50 pages of exhibits or state that Defendants have agreed Plaintiffs may exceed the page limit for exhibits; or, Plaintiffs must file a properly supported motion seeking the Court's leave to exceed this page limit." (Doc. 68 at 2.)

On January 24, 2022, Defendants filed a motion to enforce the Court's order granting their fee petition. (Doc. 67.) The Court granted this motion on January 25, 2022, directing Plaintiffs' counsel to reissue the sanctions check he had previously issued to Defendants to be made payable to Defendants' insurer or their counsel's firm. (Doc. 70.)

Plaintiffs filed an amended response to Defendants' Motion to Dismiss on January 28, 2022, but again attached 210 pages of exhibits without consent or the Court's leave. (Doc. 71.) The Court again struck the response and gave Plaintiffs leave to file an amended response that complied with Local Rule 10.5. (Doc. 72.) On February 7, 2022, Plaintiffs filed a second amended response to the Motion to Dismiss. (Doc. 73.) This response included 140 pages of exhibits without consent or the Court's leave and thus also failed to comply with Local Rule 10.5. (*Id.*; Doc. 74 at 2-3.)

On February 9, 2022, the Court issued a second Order to Show Cause, in which it directed Plaintiffs to file a written show-cause response explaining why the Court should not sanction them and/or their counsel for persistently failing to comply with Local Rule 10.5. (Doc. 74 at 3.) On February 16, 2022, Plaintiffs filed a third amended response to Defendants' Motion to Dismiss, this time attaching 47 pages of exhibits. (Doc. 76.) Plaintiffs filed their show-cause response two days later, contending that their counsel had misinterpreted Local Rule 10.5 to limit each exhibit to 50 pages, rather than limiting all exhibits to 50 pages collectively.[2] (Doc. 77.) On February 24, 2022, the Court struck Plaintiffs' second amended response to the Motion to Dismiss and designated their third amended response as the operative pleading. (Doc. 78.) Defendants filed a reply in support of the motion on March 2, 2022. (Doc. 79.)

## II.    Analysis

### A.    *Defendants' Motion to Strike*

#### 1.    Legal Standards

Pursuant to Federal Rule of Civil Procedure 26(a)(2), "a party must disclose to the other parties the identity of any witness it may use at trial to present evidence under Federal Rule of Evidence 702, 703, or 705." Fed. R. Civ. P. 26(a)(2)(A). For witnesses who are not retained or employed to provide expert testimony, a party must also disclose "the subject matter on which the witness is expected to present evidence under Federal Rule of Evidence 702, 703, or 705," and "a summary of the facts and opinions to which the witness is expected to testify." Fed. R. Civ. P. 26(a)(2)(C). "A party must make these disclosures at the times and in the sequence that the court orders." Fed. R. Civ. P. 26(a)(2)(D).

---

[2] This interpretation of Local Rule 10.5 is illogical; limiting the number of pages for each exhibit but not the total number of pages of exhibits would amount to no limit at all. Also, this interpretation is untenable in light of the Court's orders directing Plaintiffs to file an amended response that "include[s] no more than 50 pages of exhibits." (Doc. 68 at 2; Doc. 72 at 2 (emphasis omitted).)

The required disclosures for non-retained experts under Rule 26(a)(2)(C) are "considerably less extensive" than those required for retained experts under Rule 26(a)(2)(B). Fed. R. Civ. P. 26(a)(2)(C), Advisory Committee Notes, 2010 amendments. Thus, "[c]ourts must take care against requiring undue detail, keeping in mind that these witnesses have not been specially retained and may not be as responsive to counsel as those who have." *Id.*

> However, Rule 26(a)(2) disclosure obligations cannot be ignored or dismissed as a mere formality, and while less demanding, these requirements still must be met. At a minimum, the disclosure should obviate the danger of unfair surprise regarding the factual and opinion testimony of the non-retained expert.

*Nosewicz v. Janosko*, No. 16-CV-00447-PAB-KLM, 2019 WL 4248895, at *5 (D. Colo. Aug. 19, 2019) (quotation marks, citation, and brackets omitted), *report and recommendation adopted*, No. 16-CV-00447-PAB-KLM, 2019 WL 4242739 (D. Colo. Sept. 6, 2019).

If a party fails to make the expert disclosures Rule 26(a)(2) requires, "the party is not allowed to use that … witness to supply evidence … unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1). "In addition to or instead of this sanction," courts "may order payment of the reasonable expenses, including attorney's fees, caused by the failure," and "may impose any other appropriate sanctions," including those listed in Rule 37(b)(2)(A)(i) through (vi). Fed. R. Civ. P. 37(c)(1). Rule 37(b)(2)(A)(iii) permits courts to "strik[e] pleadings in whole or in part." Fed. R. Civ. P. 37(b)(2)(A)(iii).

"The determination of whether a Rule 26(a) violation is justified or harmless is entrusted to the broad discretion of the district court." *Woodworker's Supply, Inc. v. Principal Mut. Life. Ins. Co.,* 170 F.3d 985, 993 (10th Cir. 1999). In making this determination, "a court must present an explanation for its choice sufficient to enable a reviewing court to determine that it did not act thoughtlessly, but instead considered the factors relevant to its decision and in fact exercised its

discretion." *HCG Platinum, LLC v. Preferred Prod. Placement Corp.*, 873 F.3d 1191, 1203 (10th

Cir. 2017).

> A district court need not make explicit findings concerning the existence of a
> substantial justification or the harmlessness of a failure to disclose. Nevertheless,
> the following factors should guide its discretion: (1) the prejudice or surprise to the
> party against whom the testimony is offered; (2) the ability of the party to cure the
> prejudice; (3) the extent to which introducing such testimony would disrupt the
> trial; and (4) the [errant] party's bad faith or willfulness.

*Woodworker's Supply, Inc.*, 170 F.3d at 993 (citation omitted). "Without a finding of bad faith or

gamesmanship courts are loathe to invoke the strong medicine of precluding expert testimony."

*Harvey v. THI of N.M. at Albuquerque Care Ctr.*, Civ. No. 12-727 MCA/LAM, 2015 WL

13667111, at *6 (D.N.M. Mar. 31, 2015) (ellipses omitted).

2.   <u>Discussion</u>

In their Motion to Strike, Defendants ask the Court to strike the designation of thirteen non-

retained expert witnesses in Plaintiffs' Fifth Amended Initial Disclosures with First Amended

Designation of Expert Witnesses, (Doc. 28-3), for failure to comply with Rule 26(a)(2).[3] (Doc. 28

at 1-2.) The first non-retained expert so disclosed is the "Carlsbad Police Department," and the

remaining twelve are healthcare facilities at which Plaintiffs received post-accident medical

treatment. (Doc. 28-3.)

Defendants argue that Plaintiffs' non-retained expert witness disclosures are inadequate

because they "do[] not include the subject matter" of the witnesses' anticipated expert testimony

or "a summary of the facts and opinions" to which the witnesses are expected to testify, and "are

not limited to the witness[es] identified, thereby, not identifying the respective testimony of each

---

[3] Except for references to additional documents, the expert disclosures in "Plaintiffs' Fifth Amended Disclosures with
First Amended Designation of Expert Witnesses," (Doc. 28-3), appear identical to the expert disclosures in "Plaintiffs'
Fourth Amended Initial Disclosures with Designation of Not-Expert [sic] Witnesses," (Doc 28-1). As such, the Court's
analysis regarding the adequacy of the former applies equally to the latter.

witness associated with the designated entity or facility." (Doc. 28 at 3.) Defendants further argue that Plaintiffs' failure to properly disclose their non-retained experts is neither substantially justified nor harmless and their designation should therefore be stricken. (*Id.* at 5-7.)

In response, Plaintiffs contend that their expert disclosures are proper because they have provided their experts' "actual reports," which "contain the facts and data the experts considered," "all the exhibits the experts will use," and "thousands of pages of opinions and factual summaries." (Doc. 54 at 1-2.) According to Plaintiffs, they disclosed these records "[r]ather than selectively includ[ing] information and brief summaries of what the experts will testify about (i.e. cherry picking by the Plaintiffs' own lawyer)." (*Id.* at 2.)

As explained below, the Court finds that Plaintiffs' non-retained expert witness disclosures are deficient in two respects. First, the disclosures are flawed in that they disclose entities rather than witnesses. (Doc. 28-3.) Although Plaintiffs do name some individuals associated with these entities, they clearly intend to include any and all individuals associated with the entities whether specifically named or not. For example, Plaintiffs designate the "Carlsbad Police Department, *including but not limited to* Corporal Wayne Atchley," and "[h]ealth care providers from Mi Doctor Medical Group, Inc. – Dr. Luis Marioni DC *including, but not limited to* Dr. Luis Marioni DC." (Doc. 28-3 at 1 (emphases added).)

Rule 26(a)(2)(A) states that a party must disclose "the identity of any *witness* it may use at trial to present evidence under Federal Rule of Evidence 702, 703, or 705." Fed. R. Civ. P. 26(a)(2)(A) (emphasis added). In this context, a "witness" is "one who testifies in a cause or before a judicial tribunal." https://www.merriam-webster.com/dictionary/witness (last visited Mar. 18, 2022). Entities cannot take the stand and testify; only individuals can. Thus, Rule 26(a)(2)(A) requires parties to identify individuals as expert witnesses, and Plaintiffs' disclosures are

inadequate to the extent they identify entities instead. *See, e.g., Funderburk v. S.C. Elec. & Gas Co.*, No. 3:15-CV-04660-JMC, 2019 WL 2881524, at *3 (D.S.C. June 27, 2019) (plaintiffs failed to comply with Rule 26(a)(2)(A) by disclosing "unnamed representatives of various entities to offer expert testimony"); *Selby by Selby v. Kmart Corp.*, No. 1:17CV-00042-GNS, 2017 WL 6347967, at *4-*5 (W.D. Ky. Dec. 12, 2017) (plaintiff failed to comply with Rule 26(a)(2)(A) by failing to "identify the expert witnesses" who would "testify on behalf of the seven entities" she disclosed); *Washington v. Arapahoe Cty. Dep't of Soc. Servs.*, 197 F.R.D. 439, 441 n.1 (D. Colo. 2000) (plaintiffs' disclosure of healthcare entities did not satisfy Rule 26(a)(2)(A); plaintiffs were required to "identify the particular person at those entities who will offer expert testimony").

Second, Plaintiffs' disclosures are deficient because they fail to include "a summary of the facts and opinions to which [each] witness is expected to testify." Fed. R. Civ. P. 26(a)(2)(C)(ii). Plaintiffs contend that they do not need to provide such summaries because they have referred to and produced records the witnesses have authored; and, the facts and opinions to which the witnesses are expected to testify can be gleaned from these records. (Doc. 54 at 1-2.) The Court disagrees. With respect to Corporal Wayne Atchley, the crash report to which Plaintiffs refer includes no express opinions. (Doc. 28-3 at 1.[4]) Under Rule 26(a)(2)(C), Defendants are not required to either guess at what opinions the report might encompass or depose Corporal Atchley to find out. Rather, Plaintiffs are obliged to disclose a summary of these opinions. Fed. R. Civ. P. 26(a)(2)(C).

---

[4] The crash report is Bates-numbered 00001-00007 and is accessible via Dropbox links in exhibits to Plaintiffs' operative response to Defendants' Motion to Dismiss. (*See, e.g.*, Doc. 76-1 at 1.) As further discussed in Section II.B.2., *infra*, the Court declines to consider documents accessible via Dropbox links in the exhibits to Plaintiffs' operative response in deciding Defendants' Motion to Dismiss, because they are not part of the record, and also to do so would be to allow Plaintiffs to grossly exceed Local Rule 10.5's page limit for exhibits to their operative response. Nevertheless, the Court has seen the crash report.

Similarly, with respect to their treating healthcare providers, Plaintiffs must do "more than merely rely[] on the medical records" to satisfy Rule 26(a)(2)(C)'s requirements. *Ramirez v. Ultimate Concrete, LLC*, No. 13CV649 JCH/LAM, 2015 WL 12832341, at *2 (D.N.M. Feb. 10, 2015); *see, e.g.*, *Vanderlaan v. Ameriprise Auto & Home Ins.*, No. 20-CV-00191-PAB-STV, 2021 WL 4441518, at *6 (D. Colo. Sept. 28, 2021) (Under Rule 26(a)(2)(C), "[i]t is not enough to state that the witness will testify consistent with information contained in the medical records[.]") (brackets omitted); *Nosewicz*, 2019 WL 4248895 at *5 (same); *Chambers v. Fike*, No. 13-1410-RDR, 2014 WL 3565481, at *7 (D. Kan. July 18, 2014) (same); *see also Infiesta-Montano v. Cocca Dev. Ltd.*, No. 18-CV-4-R, 2019 WL 7630627, at *2 (D. Wyo. June 7, 2019) ("[T]he disclosure of a treating physician is not sufficient if it merely references the physician's opinions elucidated at a deposition or contained within the physician's medical records.").

Rather, to satisfy Rule 26(a)(2)(C), treating physician disclosures "must summarize actual and specific opinions" and "the factual basis for the opinions as well as specifics from the medical records." *Vanderlaan*, 2021 WL 4441518 at *7 (quotation marks omitted).

> Citation to records with no clear indication of what sections will be used or how the facts or opinions will be framed and presented in testimony does not constitute a "summary of the facts and opinion[s] to which the witness is expected to testify" within the meaning and requirements of Rule 26(a)(2)(C)(ii).

*Id.* (brackets omitted). These principles are particularly important to "obviate the danger of unfair surprise" where the medical records in question are voluminous. *Nosewicz*, 2019 WL 4248895 at *5-*6; *see also Vanderlaan*, 2021 WL 4441518 at *7 ("designation of a prodigious volume of material" does not satisfy Rule 26(a)(2)(C)) (brackets omitted).

In this case, Plaintiffs have identified certain treating healthcare providers as non-retained experts and have given "a general description of the subject matter of their testimony." *Ramirez*, 2015 WL 12832341 at *2. However, the descriptions are "so general" that they "really amount[]

to inviting Defendant[s] to sift through the medical records to attempt to figure out what each expert may testify to." *Id.* Most egregiously, Plaintiffs' descriptions provide no indication at all of what each expert's *opinions* might be, instead merely listing services the experts have provided. (Doc. 28-3.) Moreover, Plaintiffs' failure to summarize the facts and opinions to which their healthcare providers are expected to testify poses a high risk of unfair surprise in light of the "thousands of pages" of medical records involved. (Doc. 54 at 2.) In sum, "[a]lthough the requisite treating physician summary is considerably less extensive and less detailed than a retained expert's report, the summary needs more detail than that provided here." *Ramirez*, 2015 WL 12832341 at *2 (quotation marks omitted).

Having concluded that Plaintiffs' expert disclosures are deficient, the Court must next determine whether they should be stricken as Defendants request. Fed. R. Civ. P. 37(c)(1). Applying the *Woodworker's Supply* factors listed in Section II.A.1., *supra*, the Court concludes that they should not. *See Woodworker's Supply, Inc.*, 170 F.3d at 993. First, although Plaintiffs' inadequate disclosures have prejudiced Defendants by depriving them of information to which they are entitled and which they need to defend against Plaintiffs' claims, Plaintiffs can and will be required to cure this prejudice by promptly supplementing their disclosures with the missing information. "Given the disclosure of the medical records and the general information provided in the [d]isclosures, Defendant[s] will not suffer undue surprise or be prejudiced by the late disclosure of this more detailed summary." *Ramirez*, 2015 WL 12832341 at *3. Moreover, the Court will entertain a prompt motion to extend case management deadlines to allow Defendants to take discovery from Plaintiffs' non-retained experts after complete disclosures have been made.

Next, the trial of this matter has recently been vacated and reset for January 23, 2023. (Docs. 83, 84.)  Thus, Plaintiffs' failure to make adequate expert disclosures, if promptly cured, should not disrupt trial.

Finally, at this juncture, the Court finds that Plaintiffs did not act willfully or in bad faith in making deficient expert disclosures. Plaintiffs did disclose the identity of several non-retained expert witnesses and the general subject matter of their anticipated testimony. (Doc. 28-3.) Plaintiffs also listed records exchanged between the parties that include facts and opinions to which these witnesses are expected to testify. (*Id.*) And, although caselaw establishes that broad references to medical records do not satisfy Rule 26(a)(2)(C)'s requirements, Defendants did not cite to any of this authority in the conferral letter they sent to Plaintiffs' counsel before filing their Motion to Strike. (Doc. 28-2.) In these circumstances, and giving Plaintiffs the benefit of the doubt, the Court concludes that the deficiencies in Plaintiffs' disclosures were not the result of bad faith or gamesmanship and will deny Defendants' request for an order striking the disclosures. *Harvey*, 2015 WL 13667111 at *6. Instead, the Court will require Plaintiffs to promptly supplement their non-retained expert witness disclosures to remedy the deficiencies identified herein, and will also require Plaintiffs' counsel to pay Defendants the reasonable expenses they have incurred in bringing their Motion to Strike under Rule 37(c). Fed. R. Civ. P. 37(c)(1)(A).

B.    *Defendants' Motion to Dismiss*

1.    Legal Standards

Rule 26(a)(1) requires a party to disclose certain information to the other parties "without awaiting a discovery request." Fed. R. Civ. P. 26(a)(1)(A). *Inter alia*, such disclosures must include

> a computation of each category of damages claimed by the disclosing party--who must also make available for inspection and copying as under Rule 34 the documents or other evidentiary material … on which each computation is based, including materials bearing on the nature and extent of injuries suffered[.]

Fed. R. Civ. P. 26(a)(1)(A)(iii).

Rule 26(b), in turn, permits parties to

obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.  Information within this scope of discovery need not be admissible in evidence to be discoverable.

Fed. R. Civ. P. 26(b)(1). Rule 33 permits a party to serve interrogatories regarding "any matter that may be inquired into under Rule 26(b)," Fed. R. Civ. P. 33(a)(2), and Rule 34 permits a party to serve requests to produce and permit the inspection and copying of documents "within the scope of Rule 26(b)." Fed. R. Civ. P. 34(a)(1).

Rule 37 authorizes a party to move for an order compelling a disclosure, answer, or production if another party "fails to make a disclosure required by Rule 26(a)," "fails to answer an interrogatory submitted under Rule 33," or "fails to produce documents … as requested under Rule 34." Fed. R. Civ. P. 37(a)(3)(A), (B)(iii), (iv). If a party "fails to obey an order to provide or permit discovery," the Court "must order the disobedient party, the attorney advising that party, or both to pay the reasonable expenses, including attorney's fees, caused by the failure, unless the failure was substantially justified or other circumstances make an award of expenses unjust." Fed. R. Civ. P. 37(b)(2)(C). The Court may also impose other sanctions, including "dismissing the action or proceeding in whole or in part." Fed. R. Civ. P. 37(b)(2)(A)(v).

Before dismissing a case as a sanction for discovery violations, courts should ordinarily evaluate the "*Ehrenhaus* factors," *i.e.*: (1) the degree of actual prejudice to the other party; (2) the amount of interference with the judicial process; (3) the litigant's culpability; (4) whether the court warned the party in advance that dismissal would be a likely sanction for noncompliance; and, (5)

the efficacy of lesser sanctions. *Ecclesiastes 9:10-11-12, Inc. v. LMC Holding Co.*, 497 F.3d 1135, 1143 (10th Cir. 2007); *Gripe v. City of Enid, Okla.*, 312 F.3d 1184, 1188 (10th Cir. 2002); *Ehrenhaus v. Reynolds*, 965 F.2d 916, 921 (10th Cir. 1992). "[D]ismissal is warranted when the aggravating factors outweigh the judicial system's strong predisposition to resolve cases on their merits." *Ecclesiastes 9:10-11-12, Inc.*, 497 F.3d at 1143 (quotation marks omitted). "[D]ismissal represents an extreme sanction," *Ehrenhaus*, 965 F.2d at 920, and "is appropriate only in cases of willful misconduct." *Conkle v. Potter*, 352 F.3d 1333, 1337 (10th Cir. 2003) (quotation marks omitted).

  2. <u>Discussion</u>

  As a preliminary matter, the Court declines to consider the documents linked to Plaintiffs' operative response via Dropbox in resolving Defendants' Motion to Dismiss. (*See* Doc. 76-1 at 1, 3-6, 8-9; Doc. 76-3 at 1.) As this Court has admonished Plaintiffs before, Local Rule 10.5 prohibits the attachment of more than 50 pages of exhibits to a response absent the opposing party's consent or the Court's leave. D.N.M.LR-Civ.10.5. Plaintiffs have never filed a motion to exceed this page limit in responding to Defendants' Motion to Dismiss and have never indicated Defendants' consent for them to do so.[5] Yet, at rough count, the Court was able to follow Dropbox links in the exhibits attached to Plaintiffs' operative response to about ***4,300 pages*** of documents. (Doc. 76-1 at 1, 3-6, 8-9.)

  True, Local Rule 10.5 does not specifically address page limits for documents accessible via links in exhibits filed on the docket, versus page limits for the exhibits themselves. However,

---

[5] Indeed, Defendants suggest that Plaintiffs have never even sought such consent from them. (*See* Doc. 79 at 8 ("This Court advised Plaintiffs on several occasions that an extension of exhibits would be permissible if Plaintiffs had received Defendants['] agreement. [Doc. 68, 72, 74]. However, instead of contacting Defendants even once, Plaintiffs opted to file the same flawed document repeatedly.").)

these hyperlinked documents are not part of the record in this case. And if the Court were to consider such documents here, it would effectively be allowing Plaintiffs to rely on 4,300 pages of unfiled exhibits—a staggering number in this context—without consent or the Court's leave. The Court declines to countenance such a gross violation of the spirit of Local Rule 10.5. Thus, in resolving Defendants' Motion to Dismiss, the Court will consider only the information included on the face of the 47 pages of filed exhibits attached to Plaintiffs' operative response in compliance with Local Rule 10.5.

Turning to the substantive issues presented in the Motion to Dismiss, Defendants argue that the Court should dismiss Plaintiffs' claims with prejudice pursuant to Rule 37(b)(2)(A) because Plaintiffs have failed to provide complete disclosures and discovery responses in violation of the Court's October 26, 2021 order granting their motion to compel. (Doc. 65 at 1, 3-4, 13; *see* Doc. 36.) In that order, the Court directed Plaintiffs to produce:  (a) "complete Rule 26 Initial Disclosures regarding Plaintiffs' computation of damages and supporting documents"; (b) complete answers to Defendants' Interrogatories Nos. 4, 5, and 24; and, (c) complete responses to Defendants' Requests for Production Nos. 1, 9, and 14. (Doc. 36 at 1-3 (quotation marks omitted).) According to Defendants, Plaintiffs still have not meaningfully supplemented their disclosures and discovery responses as ordered. (Docs. 65, 79.)

In their operative response to Defendants' motion, Plaintiffs do not individually address the adequacy of each disclosure and discovery response at issue. (Doc. 76.) Rather, they simply contend that all of their disclosures and responses are adequate because they have withdrawn their objections to Defendants' requests and Defendants "ha[ve] every responsive document in Plaintiffs' counsel's file[.]" (*Id.* at 1.) Plaintiffs add that they have "also provided numerous

authorizations to Defendants' counsel so they could go get anything they desired including but not limited to tax returns, medical records, billing records, employment records, etc."[6] (*Id.* at 2.)

The Court finds that, as amended, Plaintiffs' disclosures and discovery responses remain inadequate. As a general proposition, the Court reminds Plaintiffs that their discovery obligations are not limited to producing what is "in [their] counsel's file." (*Id.* at 1.) For example, Rule 26(a)(1) requires parties to produce "a computation of each category of damages claimed by the disclosing party" and "the documents or other evidentiary material … on which each computation is based[.]" Fed. R. Civ. P. 26(a)(1)(A)(iii). Local Rule 26.3(d) requires a party who places his or her "physical or mental medical condition" at issue to identify "any healthcare provider" who has "treated the party within the last five (5) years preceding the date of the occurrence set forth in the pleadings and continuing through the current date." D.N.M. LR-Civ. 26.3(d)(1). Interrogatories, if not objected to, "must … be answered separately and fully in writing under oath." Fed. R. Civ. P. 33(b)(3). And, requests for production may seek copies of otherwise discoverable documents that are "in the responding party's possession, custody, or control." Fed. R. Civ. P. 34(a)(1). Counsel's file may or may not include all of the documents and information these provisions encompass, and if not, counsel must usually make a good faith effort to obtain them in order to produce them.

More specifically, the Court finds that, as amended, Plaintiffs' disclosures and discovery responses are deficient in the following respects.

        *a.*     *Damages computation*

The Rule 26(a)(1) damages computation in Plaintiffs' Fifth Amended Initial Disclosures is incomplete. (Doc. 79 at 13-14.) Plaintiffs do list accident-related medical expenses they have

---

[6] In their response, Plaintiffs request a hearing and for the Court to sanction Defendants for bringing their Motion to Dismiss. (Doc. 76 at 3.) The Court will not entertain these requests, which are procedurally improper and also lack merit in light of the Court's determination that Plaintiffs' disclosures and discovery responses are inadequate. *See* Fed. R. Civ. P. 7(b) (request for court order must be made by motion, which must state its grounds with particularity).

incurred and appear to have produced many of the medical records supporting these expenses. (*Id.*; Doc. 76-2 at 3-5, 17-18.) They also state that they "have requested records and reserve[] the right to supplement." (Doc. 79 at 13-14.) However, they fail to state what records they have requested but not yet received and/or whether any ongoing treatment may or will generate additional expenses in the future.[7] (*Id.*)

In addition, Plaintiffs do not compute the damages they claim for lost income. They do, in their second amended answers to Interrogatory No. 10, list the number of work hours they claim to have missed due to the accident at issue, as well as their hourly wage rates. (Doc. 76-2 at 12, 26.) However, "[t]he plaintiff cannot shift to the defendant the burden of attempting to determine the amount of the plaintiff's alleged damages." *Jackson v. United Artists Theatre Cir., Inc.*, 278 F.R.D. 586, 593 (D. Nev. 2011). And, Plaintiffs' failure to provide a computation of this category of damages leaves unanswered, for example, whether they only intend to claim the product of the missed hours and hourly rates listed in their interrogatory answers, or whether they also intend to claim future lost earnings due to ongoing treatment and/or impairment. *See Isom v. Midwest Div.- OPRMC, LLC*, No. 13-2602-RDR, 2014 WL 3541842, at *3 (D. Kan. July 17, 2014) ("Plaintiff should have been able to provide, at the very least, an estimated dollar amount for past and future lost wages/benefits and how she calculated these estimates."). Nor do Plaintiffs' disclosures indicate that they have produced the documents on which a computation of lost income and/or earning capacity would be based.[8] Fed. R. Civ. P. 26(a)(1)(A)(iii).

---

[7] Plaintiffs indicate that they will supplement Mr. Heaton's medical expenses from Brazos Pain Management/Victoria Pain and Rehab, and Ms. Heaton's medical expenses from Texas Neurodiagnostic, Headache & Sleep Disorders Center, P.A. and West Texas Imaging Center. (Doc. 79 at 14.) However, they do not indicate which of these providers' records are missing or whether there are other providers from whom they have requested but not yet received records. (*See id.*)

[8] Plaintiffs purport to have produced Mr. Heaton's 2020 income tax return. (Doc. 76-2 at 2.) However, they do not purport to have produced any other documents in response to Defendants' requests for their income tax returns and "other evidence of earned income from 2015 to the present." (*Id.* at 2, 16.)

Finally, Plaintiffs' damages computation includes no computation of their non-economic damages. Non-economic damages "may not be amenable to the kind of calculation disclosure contemplated by Rule 26(a)(1)(A)(iii)." *Tijerina v. Corr. Dep't*, No. CV 20-0706 MV/JHR, 2021 WL 4972603, at *3 (D.N.M. Oct. 26, 2021) (brackets omitted). Nevertheless, Plaintiffs are "not relieved from disclosing any specific evidence [they] intend[] to utilize at trial" to support their claims for such damages, and they may be precluded from requesting specific amounts if they do not include them in their Rule 26(a)(1) damages computation. *Montoya v. Retiree Health Care Auth.*, No. 18-CV-578 JCH/JFR, 2019 WL 2718689, at *5 (D.N.M. June 7, 2019), *report and recommendation adopted*, No. CV 18-578 JCH/JFR, 2019 WL 2717115 (D.N.M. June 28, 2019). Plaintiffs should supplement their damages computation to correct these omissions.

### b.   *Interrogatory No. 4*

Plaintiffs' second amended answers to Interrogatory No. 4 are incomplete. Interrogatory No. 4 asks Plaintiffs to describe and provide documentation of the medical treatment they have received as a result of the accident at issue.[9] (Doc. 76-2 at 9, 22.) In response, Plaintiffs refer to extensive medical records exchanged between the parties by Bates number and provider. (*Id.* at 9-11, 22-25.) However, in their motion to compel, Defendants identified a number of specific medical records Plaintiffs have failed to produce, (Doc. 24 at 10-12), and Plaintiffs have never directly addressed or refuted this identification. (*See generally* Doc. 76.) Furthermore, in their Motion to Dismiss and reply, Defendants assert that Plaintiffs have not meaningfully supplemented

---

[9] Interrogatory No. 4 asks Plaintiffs, *inter alia*, to attach documents reporting their appointment dates, providers, diagnoses, treatments, prognoses, and/or medical expenses or to "set forth [the] portions of such writings" that reflect their diagnoses and expenses. (Doc. 76-2 at 9, 22.) Although this portion of Interrogatory No. 4 ignores the distinction between Rule 33 interrogatories and Rule 34 requests for production, Plaintiffs did not object to it on that basis and indeed chose to respond to the interrogatory solely by referring to their medical records. As such, the Court will assume without deciding that the hybrid form of the request is proper.

their answers to this interrogatory, leaving them with "the exact same concerns" that necessitated the motion to compel. (Doc. 65 at 4-6; Doc. 79 at 5.)

Of course, if Plaintiffs have since produced any of the missing medical records listed in Defendants' motion to compel, they need not do so again. However, to the extent they have not, they must do so now. Having chosen to answer this interrogatory by producing medical records, Plaintiffs must do so "fully," Fed. R. Civ. P. 33(b)(3); and, Plaintiffs' own medical records regarding treatment they have received due to the accident at issue are plainly discoverable and within their ability to obtain and produce. Fed. R. Civ. P. 26(b)(1). Additionally, it would be unduly burdensome to require Defendants to use the medical records releases Plaintiffs have purportedly provided to obtain updated records without knowing whether Plaintiffs continue to receive accident-related treatment and if so when and where. Thus, Plaintiffs must supplement their answers with records regarding ongoing treatment "pursuant to Fed. R. Civ. P. 26(e)(1) within twenty-one (21) days of learning [their answers are] incomplete or incorrect." (Doc. 11 at 2.)

        *c.*    *Interrogatory No. 5*

Plaintiffs' second amended answers to Interrogatory No. 5 are deficient. In Interrogatory No. 5, Defendants ask Plaintiffs to describe "every accident, injury, and illness" they have had in the past 10 years, other than the incident referred to in their complaint. (Doc. 76-2 at 11, 25.) In response, Mr. Heaton states that he "had pneumonia in October 2020," and Ms. Heaton states, "None." (*Id.*)

Plaintiffs appear to be claiming that the only responsive accident, injury, or illness Mr. Heaton has had is a case of pneumonia in October 2020, and that Ms. Heaton has had no responsive accidents, injuries, or illnesses at all. However, their terse answers leave open the possibility that there are responsive accidents, injuries, or illnesses they have not yet disclosed. Thus, the Court

will require Plaintiffs to (1) identify all responsive accidents, injuries, and illnesses they have had, and (2) state unequivocally under oath that they have had no responsive accidents, injuries, or illnesses other than those they identify in compliance with this Order.[10]

> d.    _Interrogatory No. 24_

Plaintiffs' second amended answers to Interrogatory No. 24 are deficient. In Interrogatory No. 24, Defendants ask Plaintiffs, _inter alia_, to indicate whether they are or were Medicare, Medicaid, or Social Security disability beneficiaries, and to list all entities "that currently hold a lien applicable to this litigation." (_Id._ at 14, 27.) In response, Plaintiffs state that they are "not medicare, medicaid or social security disability eligible" and "believe[] Well States Health Care has a lien for medical care rendered in this matter." (_Id._)

It appears Plaintiffs are claiming that they are not and never have been Medicare, Medicaid, or Social Security disability beneficiaries, and that the only entity holding a lien related to this litigation is Well States Healthcare. However, their answers leave open the possibility that they have received Medicare, Medicaid, or Social Security disability benefits in the past and/or that there are other responsive lien holders. The Court will therefore require Plaintiffs to identify all Medicare, Medicaid, and Social Security disability benefits they have ever received and all responsive lien holders. In addition, they shall state unequivocally under oath that they have never received any responsive benefits, and that there are no responsive lien holders, other than those they identify in compliance with this Order.

---

[10] In their reply in support of their Motion to Dismiss, Defendants also assert that "Plaintiffs have not provided a list of healthcare providers that have treated Plaintiffs within the last five years preceding the date of the subject accident as required by [Local Rule 26.3(d)(1)]." (Doc. 79 at 5-6.) Defendants raise this issue for the first time in their reply, and the Court's order granting Defendants' motion to compel did not address it. As such, the Court will not rule on it here. However, Local Rule 26.3(d)(1) does require Plaintiffs to "make a good faith effort to produce … the name, address and phone number of any healthcare provider … [who has] treated [them] within the last five (5) years preceding the date of the occurrence set forth in the pleadings and continuing through the current date." D.N.M.LR-Civ. 26.3(d)(1). Thus, Plaintiffs must produce this information even in the absence of an order requiring it.

Also in Interrogatory No. 24, Defendants ask Plaintiffs to produce "copies of any correspondence indicating the presence of a lien or potential lien" pursuant to Rule 34.[11] (*Id.*) In response, Plaintiffs do not indicate whether any responsive documents exist and if so whether they have produced them. (*Id.*) Thus, the Court will require Plaintiffs to identify any responsive documents that exist and to produce them to the extent Plaintiffs have these documents or can obtain them by requesting them from the lien holder(s).[12]

    e.    *Request No. 1*

Plaintiffs' second amended responses to Request No. 1 are deficient. In Request No. 1, Defendants ask Plaintiffs to produce "[a]ll income tax returns, including W-2s or other evidence of earned income from 2015 to the present." (*Id.* at 2, 16.) In response, Mr. Heaton purported to produce his 2020 income tax return, while Ms. Heaton stated, "None." (*Id.*)

It appears Plaintiffs are claiming that the only document responsive to this request is Mr. Heaton's 2020 income tax return, and that no other responsive documents exist. If so, Plaintiffs must say so unequivocally. If, however, other responsive documents exist and Plaintiffs either have them or can obtain them by requesting them from the government and/or their current or former employers, Plaintiffs must so state and must supplement their document production accordingly.[13]

---

[11] In this interrogatory, as in Interrogatory No. 4, Defendants ignore the distinction between interrogatories and requests for production; however, Plaintiffs did not object to the interrogatory on that basis, and the Court will therefore assume without deciding that the hybrid form of the request is proper here.

[12] Plaintiffs do not indicate whether any of the releases they claim to have provided to Defendants would allow Defendants to obtain these records independently, although the Court notes that Defendants *have* subpoenaed and obtained responsive documents from Well States Healthcare. (*See generally* Doc. 39.) Plaintiffs need not produce responsive documents Defendants have already obtained directly from this or any other responsive lienholder(s).

[13] In light of Plaintiffs' insistence that they need only produce documents in their counsel's file, (Doc. 76 at 1), the Court emphasizes that any tax returns Plaintiffs have filed since 2015 are within their possession, custody, or control even if they did not keep physical copies because they can obtain copies from the government. Likewise, it is highly likely that employer-generated records originally provided to Plaintiffs, such as W-2s and pay stubs, are within Plaintiffs' possession, custody, and control even if they did not keep physical copies because they can obtain copies

    f.  *Request No. 9*

  Plaintiffs' second amended responses to Request No. 9 are deficient. In Request No. 9, Defendants ask Plaintiffs to produce copies of documents "supporting any claim for special damages" resulting from the accident at issue. (*Id.* at 3, 17.) In response, Mr. Heaton lists medical records he has produced and adds that he "has requested records and reserves the right to supplement." (*Id.* at 3-5.) Ms. Heaton also lists medical records she has produced, (*id.* at 17-18), and although she does so without caveat, Plaintiffs' Fifth Amended Initial Disclosures state that "Plaintiffs have requested records and reserve[] the right to supplement" regarding two of Ms. Heaton's providers. (Doc. 79 at 14.)

  Plaintiffs appear to be claiming that their responses to Request No. 9 are complete with the exception of medical records requested but not yet received. If so, Plaintiffs must say so unequivocally, and must supplement their responses to identify the providers from whom responsive records have been requested but not yet been received and to describe the missing records with reasonable specificity. Alternatively, if Plaintiffs' document production in response to this request is now complete, Plaintiffs must say so unequivocally in a supplemental response.

    g.  *Request No. 14*

  Finally, Plaintiffs' second amended responses to Request No. 14 are deficient. In Request No. 14, Defendants ask Plaintiffs to produce copies of "every code, industry standard, government regulation or otherwise [sic]" that they allege Defendants violated in the course of the incident forming the basis of Plaintiffs' complaint. (Doc. 76-2 at 6, 19.) In response, Plaintiffs state that "Defendants violated NM Stat 66-8-114." (*Id.* at 7, 19.)

---

from the government and/or their employers. And again, Plaintiffs have failed to indicate whether any of the releases they claim to have provided would allow Defendants to obtain some or all of these records independently.

Plaintiffs appear to be taking the position that N.M. Stat. Ann. § 66-8-114 is the only code, industry standard, or government regulation they claim Defendants violated. However, their responses leave open the possibility that they will claim Defendants violated other codes, standards, or regulations not yet disclosed.  If Section 66-8-114 is the only code, standard, or regulation Plaintiffs claim Defendants violated, Plaintiffs must say so unequivocally. Conversely, if there are other codes, standards, or regulations Plaintiffs claim Defendants violated, they must supplement their responses to identify and produce copies of all such codes, standards, or regulations.[14]

#### h.   *Analysis of Ehrenhaus factors*

Having determined that Plaintiffs' initial disclosures and discovery responses remain inadequate despite the Court's orders requiring them to provide complete disclosures and responses no later than December 23, 2021, (Docs. 36, 50), the Court must next decide whether to grant Defendants' request for an order dismissing this action with prejudice as a sanction. In making this decision, the Court will apply the *Ehrenhaus* factors discussed in Section II.B.1., *supra*. *See Ehrenhaus*, 965 F.2d at 921.

Initially, the degree of actual prejudice to Defendants has been significant. Plaintiffs' persistent failure to provide complete disclosures and discovery responses has caused Defendants to file a motion to vacate a settlement conference, a motion to compel, two motions to extend case management deadlines, a motion to vacate Plaintiffs' IMEs, and the present Motion to Dismiss. It has also needlessly protracted this litigation and substantially interfered with the judicial process. These two factors thus weigh in favor of dismissal as a sanction.

---

[14] However, the Court will not order Plaintiffs to produce a copy of N.M. Stat. Ann. § 66-8-114; as Plaintiffs observe, that statute "is public record and equally available to all parties." (Doc. 76-2 at 7, 19.)

However, the factor of Plaintiffs' culpability weighs slightly against dismissal. Plaintiffs' continued failure to provide complete disclosures and discovery responses is certainly not wholly blameless. But, Plaintiffs have provided Defendants with a considerable amount of relevant information by way of their amended disclosures and responses, and have produced copious documents as well as signed authorizations with which Defendants may pursue documents independently. Another factor weighing slightly in Plaintiffs' favor is the efficacy of lesser sanctions. To date, the Court has only once imposed lesser sanctions on Plaintiffs, and although this did not cause Plaintiffs to provide complete disclosures and discovery responses, it does appear to have motivated them to make some effort at supplementation.[15]

The remaining factor, *i.e.*, whether the Court has warned Plaintiffs in advance that dismissal would be a likely sanction for noncompliance, weighs squarely in Plaintiffs' favor. The Court has issued no such warnings. Although the Court *has* issued two Orders to Show Cause for other reasons, it has not done so with respect to Plaintiffs' initial disclosures and discovery responses. Having considered the *Ehrenhaus* factors in light of the totality of the circumstances, the Court in its discretion finds that dismissal is not an appropriate sanction for Plaintiffs' discovery violations at this time.

However, the Court cannot allow Plaintiffs' frequent violations of rules and orders to continue indefinitely, most particularly because these violations have prejudiced and would continue to prejudice Defendants. As such, ***the Court hereby warns Plaintiffs that if they fail to meticulously comply with this Order or with any other rule or order of the Court in future, the***

---

[15] As previously noted, Plaintiffs' counsel issued Defendants a check in satisfaction of these sanctions; however, Defendants requested and the Court ordered that counsel reissue the check in the name of Defendants' insurer or defense counsel's firm. (Doc. 70.) In their reply in support of their Motion to Dismiss, Defendants represent that "Plaintiffs have yet to comply with the Court's Order to Reissue Sanctions Check." (Doc. 79 at 8.) The Court will therefore set a deadline for Plaintiffs' counsel to reissue this check as ordered if he has not already done so.

***Court may impose sanctions up to and including dismissal of this action with prejudice;
moreover, it may do so without further warning***. In addition, the Court finds that Defendants
should be awarded the reasonable attorney's fees and costs they incurred in bringing their Motion
to Dismiss, because Plaintiffs' failure to comply with the Court's order granting Defendants'
motion to compel was not substantially justified and there are no other circumstances which would
make such an award unjust. Fed. R. Civ. P. 37(b)(2)(C).

### III.   Conclusion

For the reasons set forth above, IT IS HEREBY ORDERED that:

1.     Defendants' Motion to Strike Plaintiffs' Expert Witness Disclosures (Doc. 28) is
DENIED. However, Plaintiffs shall supplement their non-retained expert witness disclosures
under Federal Rule of Civil Procedure 26(a)(2) as follows:

(a)     Pursuant to Rule 26(a)(2)(A), Plaintiffs shall separately identify each non-
retained witness they may use at trial to present evidence under Federal Rule of Evidence 702,
703, or 705. Only separately named witnesses shall be considered to have been disclosed. This
provision does not reopen the deadline for Plaintiffs to disclose retained or employed expert
witnesses under Rule 26(a)(2)(B), nor does it authorize Plaintiffs to disclose any witness who is
not associated with one or more of the entities identified in their Fifth Amended Initial Disclosures
with First Amended Designation of Expert Witnesses;

(b)     For each non-retained expert witness identified pursuant to Paragraph 1(a),
Plaintiffs shall provide Defendants with all of the information Rule 26(a)(2)(C) requires, including
but not limited to a summary of the facts and opinions to which the witness is expected to testify
that meticulously complies with the requirements discussed in this Order;

2.      Defendants' Motion to Dismiss for Repeated Discovery Violations (Doc. 65) is DENIED. However, Plaintiffs shall supplement their Rule 26(a)(1) initial disclosures and their second amended responses to Defendants' discovery requests to remedy the deficiencies in their Rule 26(a)(1) damages computation, answers to Interrogatories Nos. 4, 5, and 24, and responses to Requests for Production Nos. 1, 9, and 14, as further described in this Order;

3.      If they have not already done so, Plaintiffs shall comply with the Court's Order to Reissue Sanctions Check (Doc. 70) no later than **Friday, March 25, 2022**;

4.      Defendants may file a motion to extend case management deadlines in this matter no later than **Tuesday, March 29, 2022**.  If the motion is opposed, Plaintiffs may file a response in opposition to it no later than **three days after service of the motion**; and, Defendants may file a reply no later than **three days after service of Plaintiffs' response**. Plaintiffs are advised that if they do not timely respond to the motion, the Court may summarily grant it;

5.      No later than **Friday, April 1, 2022**, Defendants shall file an appropriately supported fee petition seeking the reasonable attorney's fees and costs they incurred in bringing their Motions to Strike and to Dismiss and stating their position, if any, regarding whether the award of expenses should be against Plaintiffs, their counsel, or both. No later than **seven days after service of the fee petition**, Plaintiffs may file a response or objections to the petition, limited to addressing the reasonableness of the expenses and their necessity in relation to the Motions and stating Plaintiffs' position, if any, regarding whether the award of expenses should be against Plaintiffs, their counsel, or both. No later than **seven days after service of Plaintiffs' response or objections**, Defendants may file a reply addressing the arguments raised in the response or objections, if any; and,

6.      Plaintiffs shall supplement their non-retained expert witness disclosures, initial disclosures, and discovery responses as required by Paragraphs 1 and 2, *supra*, no later than **Tuesday, April 12, 2022**. If Plaintiffs require additional time to supplement specific disclosures and/or responses because they have made prompt, diligent, good-faith efforts to obtain documents from non-parties but have not yet received them, the parties may agree, or Plaintiffs may file a properly supported opposed motion, to extend this deadline.

IT IS SO ORDERED.

_____
KIRTAN KHALSA
UNITED STATES MAGISTRATE JUDGE